May it please the court. My name is Athanasia Lewis and I represent the defendant Mr. Bret A. Dunning here this morning to speak on the argument of a motion to suppress specifically in the absence of an independent investigation statements made in reliance on conclusions of others are insufficient to establish probable cause for a search warrant issue. I will also speak about Mr. Dunning having a reasonable expectation of privacy in his files on his home computer as the government did not prove distribution during sentencing or any other phase of his case. And that the defendant also took measures to prevent file sharing as well as the unconstitutionality of 18 U.S.C. 2252. That latter point has to do with the receipt and possession. Yes, sir. That is that it's void for vagueness or irrational to make a distinction. Yes, sir. There's no distinction really between receipt and possession. You can't really have one without the other in other words. If you can, you can possess it if you made it. That would be the rare instance I suppose that you could distinguish between possession and receipt. But I think it would be quite obvious in that circumstance versus a circumstance where the defendant did not create the actual child pornography. There's no claim about that, that he created it or the claim is that he. Possessed it. He actually pled to receipt. He did not plead to possession. He was charged with two. Receipt gets a five year mandatory minimum. There's a five year mandatory minimum on receipt. Possession doesn't get anything. No, your honor. You can't have possession or receipt without one or the other, right? It would seem. As far as the theory is concerned, that's what our position on the situation is that it allows the prosecutor to charge either or when in reality either or is not. They're both the same. And therefore, charging with possession, which is a lesser included of the offensive receipt, would allow for a downward departure in sentencing versus just receipt, which does not allow for a downward departure. Case law about this receipt. I know that some of the judges have commented on the inconsistency, kind of the irrationality of the receipt possession situation. Are there any, is there any case law from court of appeals on this subject? As far as specifically, I did cite some case law in my brief that specifically, I don't know that the facts are spot on. But between the possession and receipt, basically the court has spoke to the fact that in the event of vagueness, it fails to give notice to an ordinary individual what kind of conduct is prohibited and may authorize and encourage arbitrary enforcement. Didn't the possession statute come after the receipt statute? I mean, I was on the Haley case, which dealt with whether one was a lesser included offense of the other, which it is. But if you look at the legislative history, there's a reason for why they passed a different statute. Now, it's not clear why they would put a different minimum on it. But the reason, I guess, was it was hard for prosecutors to show receipt because they would say, you haven't proved I received it. You've only proved that I have it. That seemed because of the very logic. You would logically say, well, if you have it, you received it. But because of the theoretical possibility that you made it yourself, they'd have a more difficult time proving it. So Congress says, we don't care whether they received it, if they possess it. And they passed the statute. Isn't that how the statute's got to be? That's how I understand the government's argument to be. That's true. It's not that irrational to have both statutes. And it might be that since you have to prove less for one, slightly, than for the other, that you might have a different punishment attached to it. I mean, that being the case, and if the government. That would be the argument. I mean, it's not like there's no argument at all. Well, I would say that if the government intended for there to be no showing of receipt, that they would perhaps not have even made a distinction in either or, and or allow for the punishment to be standardized versus different for one than the other. This leaves the sentencing process up to the prosecutor. And the judge. Yes, Your Honor. As to whether they want to charge receipt. Yes. Which, if I was a prosecutor and I aimed to objectively prosecute, I would probably end up charging with receipt versus possession due to the fact that receipt holds a mandatory minimum of five years and possession allows for a downward departure. Congress did recognize that there were some times when it was hard to show receipt, even though it was easy to show possession. Congress did recognize that. However, there is still a distinction in the statute's sentencing guidelines. So. On this problem of distribution, how exactly does that work? The theory that this was distributed, which gets more time, is that you download it, and somebody else. Well, the argument is that the distribution, first of all, was not proven. And case law is cited in my brief as to the fact that without proving distribution beyond a reasonable doubt, the downward departure should not be, or the upward departure in a sentencing guideline should not be applied. In this case, not only. In the government's theory, there's always distribution automatically if you download the pornography. Yes, it is the government's theory that it should automatically apply because it implies, by being on a peer-to-peer network, that whether or not you are actually sharing the file is irrelevant. However, and I would argue to the contrary, that the distribution situation in this case, first of all, was not acknowledged either by the defendant or proven by the court. As a matter of fact, in the pre-sentence report states, which I've stated in my brief, that it was actually pointed out that Mr. Dunning did not and took measures to try to not share files on the peer-to-peer network. Second of all, the allegation that he was file sharing is merely that. It's an allegation. The expert that the government presented at sentencing basically alleviated to the fact that the reason why there were no numbers showing in the column on the report for shared files is because, in his opinion, there wasn't any files being shared. So on top of the fact that the defendant did not plead to distribution and adamantly rejected the fact that he did. Could anyone go to his computer and pick up, if they wanted to or could find it, pick up the child pornography from his computer? Directly from his computer in his home without any, through the peer-to-peer network? Yes, through the internet, yes. Here what happened, Your Honor, is that no peer-to-peer network was ever accessed by the investigating officer ever once. A third-party program was actually used to access information from the internet that was allegedly being shown by this software. The officer never performed an independent investigation. He never actually determined that that's what was happening. But yes, in theory, the public file sharing network would supposedly show that these files were being shared. Now you would have to know a little bit more about the file, the hash value of the file, the keywords that you're looking for to establish that. You wouldn't have to know any passwords? You would have to know an IP address that is not public. And the peer-to-peer network file sharing, I mean, you basically get on there and anybody can type in a keyword and can find any file that's being shared. And yes, his files would have shown that way. But what the officer in this case did is took, through a third-party software, basically went on there, pushed search, and all this information that wouldn't have normally come up on a regular search engine like a peer-to-peer network, an IP address, hash values for these files that he actually had stored inside the software that would have told him, hey, this is child pornography. There's a lot of information that the program was providing to the officer that would not have been provided to a layperson in the same circumstance. You went on this receipt possession problem that is irrational and on the distribution problem. What does that do to this case? We would have to reverse. Then what would be the questions? This guy got 14 years for this, right? Thereabout. So what would happen in reconsidering the case? In reconsidering the receipt versus possession issue, I would assume that it would downward depart in that the statute would be deemed unconstitutional and perhaps be rewritten. Aside from being rewritten, I suppose that it would be a downward departure in the months that he received versus a higher bracket of months. What about distribution? Distribution would also have done the same thing. It would have brought down. It would have allowed for a downward departure in sentencing. So, and as far as the motion to... Technically, you don't mean downward departure. You mean a lower... A lower guideline range, yes. Range. Yes, Your Honor. I apologize. And as far as the motion to suppress is concerned, clearly it would have... seized by the officer, which... But the problem with that suppression issue is that all of this information that the police get is public information. My argument is that he didn't perform an independent investigation and relied solely on the software to give him the answers to his questions, Your Honor, which is no difference really than somebody telling a police officer, hey, my neighbor's doing drugs, and without doing anything else performs a search based on that statement. That's basically what has happened in this case. The software told the officer what to tell the magistrate and the magistrate issued warrant. The officer never conducted an independent investigation of the peer-to-peer network and never verified the information that was being fed to him by this program. And the reason why that's important is because the affidavit by the developer of the software as well as the manual that this investigating officer was supposedly trained by, both say that you cannot authenticate this information. It was only developed to provide leads and it was only developed to assist in establishing probable cause. Here, that is not what happened. Probable cause was established based solely on what the software told the investigating officer. Thank you, counsel. I don't recall if you said you had reserved rebuttal time. I apologize. I did not, but I did reserve three minutes. Okay, fine. May it please the Court. My name is Daniel Hancock. I represent the United States in this matter. I want to address two incorrect assertions that Mr. Dunning is making, first with regard to this idea that there's no independent investigation and second with regard to the distribution enhancement. This idea that there's no independent investigation that Detective Merlo did before going for a warrant is objectively false. What he did is he used law enforcement software, this child protection system software. He logged into that software. It identified Mr. Dunning's IP address as a, well, I'm getting ahead of myself. It identified an IP address local to his jurisdiction as one that had been logged sharing child pornography. But where did he get that IP address from the information in this child protective? I don't quite follow exactly how he came up with the information that led him to look at this man's computer. Sure, and I think we can answer that by just kind of doing a quick overview of how this software works. This child protection system is a website that law enforcement investigators who are trained in how to use it log into. That website has software running on its servers that is running on the, in this case, the eDonkey file sharing network. And 24-7 it is sending out searches for known child pornography materials and then keywords related to child pornography. When it detects an IP address sharing files that match either the hash value of known pornography or that match one of those keyword searches, it puts it in a log. When our detective, in this case, logged into the CPS website, it showed him here are recent IPs in your jurisdiction that have been seen sharing child pornography. Then what he can do is... And that website is public information? No, that website is restricted use to law enforcement officers who have been trained in how to use it. But it isn't, all it is doing is aggregating publicly available information. Detective Merlo, in this case, could have sat there and done all of these searches, again, to see if there was anybody in his area sharing this. All this does is it automates that process. So when Detective Merlo logs onto this website and sees... The fact is it's private information and not public information. It is publicly available information that has been aggregated in such a way that is only available to the trained investigators. So anybody could get on and do this search and see if they find child pornography, see if they can search by the hashtag of the file, they can search for specific files that way, or they can search by keywords. And Detective Merlo could... And anybody at their computer could do a search on this file sharing network and have Mr. Dunning's IP come up as an IP sharing child pornography. All this CPS software does is it automates that search process. So it's information that the public has complete access to, but the aggregation of that information is what is private about this. And the nature of the searches, I suppose. The specific nature of the hash files... The specific hash files or hashtag... I'm getting my hash words confused. The specific images being searched for, yes. The specific keywords being searched for, yes. But all of these law enforcement investigators have local databases of these files that they have compiled from their own investigations, and they could use that local database information to do these same searches based on hash values. I guess what I'm asking is it would make sense for those not to be public, because then they could be more easily evaded. Correct. So when Detective Merlo logs into this system, this is where the independent investigation comes in. He is logging into the system. It is identifying IPs that have been logged sharing child pornography. It gives him a list of all the files, and he can download that to a program on his machine. And that allows him to check, are these files actually child pornography or are these mistakes? Is the database completely wrong? He can actually go through and check each file against files that he has locally. And if you look at the warrant in this case, he says he did that. He checked the information that he got from CPS against his local law enforcement database. He actually viewed the files in question and determined that they were, in fact, child pornography. He then investigated whether the IP address is actually one that is in his jurisdiction, where it is located. He identified it as being... And the way he determines that is what? He determined which local ISP, Internet Service Provider, would have provided that address to a customer. He subpoenaed that ISP, got the customer's information. That was Mr. Dunning. He went to Mr. Dunning's address. He verified that based on the motor vehicle registration  that didn't, in fact, belong to Dunning. So this idea that there's no independent investigation, I think, is a red herring, because there clearly was. What about this problem of possession versus receipt? That looked like a totally irrational... other than if the person makes the pornography themselves, produces it, to have a distinction based on receipt versus possession when they're both more or less the same thing. You've got to have... In order to have possession, you've got to have receipt and vice versa. It looks like, to me, that it's just irrational. Well, I think that Judge Rogers touched on that earlier with the idea that possession is a lesser included offense than receipt, but they aren't the same thing. Receipt is the act of receiving child pornography. It doesn't imply that you kept it. It doesn't imply that what you did with it. It is, can you prove... Everybody who's got possession, other than if they manufacture it themselves, has received it, right? Other than if they manufactured it themselves, yes. In every case. But the issue is, can you prove that? Because especially with... The guilty of receipt has possessed it. I mean, it's... The two are conjoined in a way that you can't pull them apart. Respectfully, Your Honor, I disagree. I think that... How can you pull them apart other than if they produced it themselves? Well, that is one way. But also, just in terms of the... That's not what we're talking about in this case. Sure. No, it is not. But I think it comes down to an issue of the burden of proof for the United States. If there is a search warrant on an individual's computer and they find child pornography but can't prove... But have no idea how it got there or no idea... Other than that the person in question took some action intentionally to put it there, then there is no receipt... I'm sorry, there is no ability to bring a receipt charge. It is merely a possession claim. If, on the other hand, you can pinpoint... What happens if you couldn't have a receipt? Say that again? If investigators were to execute a search warrant and just find child pornography, they could prove that he possessed it. But they couldn't necessarily prove that he received it. Why couldn't they prove that he received it? All they'd have to do is negate that he produced it himself, that he would have to have received it. Sure. As I understand it, when the statute was amended to include possession as a separate offense, it was because the government was being required to identify the actual act of receipt, the actual date and act of receipt for these five, for child pornography. So if you can only prove... I just don't... Does receipt require... Does proving receipt require proof of the source? No, it does not require proof of the source. But it does require you to show an act of receipt, essentially. And merely possessing the implication is that you received it, but it's not one of the requirements under the statute. If you were not... It's your computer, but you weren't at home, and somebody else got on that computer and downloaded these files, the defense would be, yeah, but I didn't receive that. It came to my computer, but nothing I did. Well, I think the defense would also be I didn't possess it. I didn't know it was there. I wasn't... I did not intentionally put it there. I think you'd have a number of defenses in that case. What Congress was concerned about, though, was that you had situations where the defendant knew it was there, but there was no proof of how it got there. That's correct. And so prosecutors were having trouble. I don't know whether they had cases or court of appeals cases or whatever. There were people that were more difficult to prosecute because they had to show receipt when all they had was possession. That's my understanding, Your Honor. But why couldn't you just infer receipt for possession? I don't understand how you can possess something unless you've manufactured it yourself, unless you have received it. I mean, unless the English language, it's Alice in Wonderland making up what words mean, but I do not understand how someone can possess something and never have received it. I think we have to rely on the idea here that Congress was addressing this perceived hole in the receipt statute that Judge Rogers is referring to in that case.  Well, we can prove that you possessed it, and that is a separate crime. Congress does some strange things, I agree. But I think the point there is that having those two statutes side by side doesn't make either of them unconstitutionally vague. They both clearly define what conduct is made illegal. It's more of a double jeopardy problem, but it's an irrationality due process problem in my mind. And I think there can be a double jeopardy problem, and this Court has recognized that before, with regard to if you are proving receipt and possession as to the same instance of child pornography. But that's not the case here. And, in fact, the possession charge in this case was dropped when Mr. Dunning pleaded guilty to the receipt charge. One other thing that I would like to make sure I have up here is this idea that for the distribution enhancement to apply, that the distribution had to be proven beyond a reasonable doubt or proven by a jury. And I believe that argument comes from the Cunningham line of cases that if you are sentencing, if a district judge wants to sentence above the maximum sentence, they have to prove. A jury has to find facts that support that beyond a reasonable doubt. But as this Court found in Jones in 2007, that's 489 F. 3rd, 243, the enhancements under the sentencing guidelines that don't take a sentence above the statutory maximum don't require a jury finding, a judge is able to find those facts based on a preponderance of the evidence because of the idea that the guidelines are advisory under Booker. So that argument just is wrong, frankly. And I just wanted to make sure I addressed it while I'm up here. There's no intent to distribute here or there was? Here I believe there was, frankly. This Court has very clearly said this distribution enhancement applies when people are using peer-to-peer file sharing software. And the reason for that is... Always? Yes. In every case? In peer-to-peer. Unless you have... No mens rea requirement then? The nature of the software shows the mens rea requirement. How is that? A mens rea requirement is a mental element. Yes. The way that peer-to-peer file sharing software works is that you do a search for a file. When you find a user anywhere, you do a search for a file. Let's take it to music. But like the old Napster networks. You do a search for a song. And you find, okay, well here's this song. You double-click it. It starts downloading to your computer. It is pulling parts of that file from different users all over the internet. Because that's how it does it so fast. And that's how it makes sure it gets a complete file. So it pulls chunks of that file from all sorts of different users. As you download those chunks, people are then able to download those chunks from you. It doesn't require that you have a complete file for people to download. The way the software works is that it breaks all these files into chunks. And as you get them, you're automatically sending them back out. Was there any evidence in this case that this fellow in any way was a pedophile or had any experience with hands-on pedophilia? Or he was just looking at the porn? There was no evidence that he was actually a pedophile. It doesn't justify 14 years. I think you look at the guidelines that apply to this statute. No, morally. I'm sorry? As a matter of proportionality of the wrong to the sentence. I think that goes to the intent behind these statutes in setting that both the mandatory minimum and also the way the sentencing guidelines escalate based on various factors. But I think all of that goes to the idea that what drives creation of child pornography is the market for child pornography. And if we can eliminate the market for child pornography by harshly punishing people who are downloading these files, who are creating the market for these files, we can actually get to the source of the problem. A lot of this is an addiction, apparently. Mental illness type addiction. I understand there are arguments to be made there and I wouldn't necessarily disagree with them. But it is also one that Congress has decided is harshly punishable. I mean, just as drug addiction is harshly punishable, frankly.  Thank you, Your Honor. First, I would say that the analogy to Kylo in our situation is, I want to bring it up because basically, there was an expectation of privacy in my client's files. He took measures to make sure these files were not being distributed. He was adamant that he did not distribute these files. He did not plead to distribution in this case. That being said, there's a reasonable expectation in your home computer as is cited in Guest and Wilson inside of my brief. Furthermore, the acts that Detective Merlot took to find probable cause for his search warrant don't comply with the CPS manual he was supposedly trained with and they don't comply with the developer of the software's theory on why this software was developed. That being said, I also want to address Schumacher because the government relies heavily on it. So does Judge Atkins in his opinion when he denied our motion to suppress. There is a stark difference in Schumacher, being that we don't know whether or not there was an independent investigation conducted. And I bring that to your attention because the 1st Circuit, 6th Circuit, the 8th Circuit, and the 5th Circuit have all established opinions on this situation. However, in every single one of those circuits, an independent investigation was performed. There was something to hang your hat on. The probable cause was established by the officer's authentication of the program he was or was not using or the officer was directly using a peer-to-peer network file sharing system. He was on what you and I could be on. And as far as the program that the government is speaking to, you cannot access someone's IP address from a file sharing network. You can access it, but you don't have that number. You can't take that number down to the local cable company and ask them for the address, match it up with whose house it's at. You cannot look at these hashtag numbers and cross-reference them with a program that you don't have access to. This officer did not cross-reference anything. He took hash values that were taken from a CPS software system and he cross-referenced them with hash values that were supposedly seen by the same software on my client's computer without ever once getting on to eDonkey and saying, well, you know what, I'm going to check and see if this program and software is telling me something correct. I'm going to check and see to make sure that these 176 notable files are actually available for download on eDonkey, which he could have easily accessed like anyone else in the public. He chose not to and therefore did not establish probable cause for search warranty issue. Good faith reliance on something that you misled a magistrate on, that's just like saying, well, I broke the rules to get there, but now I'm going to blame somebody else as to why I broke the rules. Thank you, counsel.  The case will be submitted.